Burton C. JOYNER and Ethel
S. Joyner, Plaintiffs,

v.

TRIPLE CHECK FINANCIAL SERVICE,
Mr. Tax of America, Marilyn Von Almen and American Capital Government
Securities, Inc., Defendants.

No. 88–2848–TUB.

United States District Court,
W.D. Tennessee, W.D.

Sept. 5, 1991.

Robert W. McPherson, Memphis, Tenn., for plaintiffs.

Martin H. Aussenberg, Memphis, Tenn., for defendants.

### ORDER ON MOTIONS TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT

TURNER, District Judge.

Presently before the court are a motion to dismiss and a motion for partial summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56 filed by defendants Triple Check Financial Services, Inc. ("Triple Check") and Marilyn Von Almen ("Von Almen").[1] The plaintiffs' suit alleges multiple causes of action for misrepresentation in the sale of investment securities under federal and state law.

---

1. The defendants move to dismiss all claims based on the Tennessee Consumer Protection Act and for summary judgment on plaintiffs' claims arising under Section 10(b) of the Securities Exchange Act of 1934, Rule 10b–5 promulgated thereunder, and the Tennessee Blue Sky Laws.

In early 1986, plaintiff Ethel Joyner ("Joyner") consulted Von Almen for assistance in completing a tax return. Von Almen's office allegedly indicated that it was the office for Mr. Tax of America and Triple Check. Joyner contends that Von Almen "held herself out" to be qualified to assist the plaintiff in completing her tax return and as "an agent, broker, dealer and investment advisor concerning individual retirement funds and conservative investments." Von Almen provided the plaintiffs with a prospectus for a mutual fund named American Capital Government Securities, Inc. ("ACG Securities").[2]

Joyner alleges that in reliance upon the advice and representations of Von Almen, acting individually or as an agent for the other defendants, she agreed to place her individual retirement fund in ACG Securities through Triple Check and under the control of Von Almen and Triple Check. She contends that she was told that the principal of her investment was not at risk and that only the amount of interest was subject to market risks.

Plaintiffs Burton and Ethel Joyner allege that in reliance on the urging of Von Almen, acting individually and as agent for the other defendants, they placed their life savings ($92,500) with Von Almen for investment. They contend that they were told that the principal of their investments was safe and that the only risk was the amount of interest they would receive.

In August 1987, Joyner learned that the interest on her investment was fluctuating more than she alleges Von Almen represented to her that it would. She was also informed in August 1987 that the plaintiffs' investment principal had decreased. On September 16, 1987, Joyner wrote to the Security Division of the Tennessee Department of Commerce & Insurance complaining of the defendants' actions and requesting help. She states that she wrote to Triple Check on October 7, 1987, and requested that her investments in ACG Securities be rescinded. Joyner alleges that she did not learn that the defendants had violated any securities laws of the State of Tennessee or any federal securities laws until September 1988.[3]

The plaintiffs filed their complaint in the Circuit Court of Shelby County, Tennessee, on September 16, 1988. The case was subsequently removed to federal court. The plaintiffs' complaint claims the following causes of action:

1. Violation of defendants' good faith duty of fair dealing implied by virtue of the express and implied contract which existed amongst the parties;

2. Violation of the Tennessee Consumer Protection Act, in particular T.C.A. §§ 47–18–104 and 47–18–109;

3. Violation of Tennessee statutes requiring registration of broker-dealers, agents, and investment advisors, in particular T.C.A. §§ 48–2–109 and 48–2–122;

4. Fraudulent misrepresentation;

5. Negligent misrepresentation;

6. Violation of "section 10b–5 of the Securities Exchange Act of 1934," deliberate misrepresentation of the defendants' right to do business in Tennessee and their authorization to act as brokers, agents, and investment advisers;

7. Violation of fiduciary duty;

8. Violation of Section 10(b) and Rule 10(b)–5, unsuitable investments; and

9. Liability under section 20 of 15 U.S.C. § 78t.

The plaintiffs request compensatory and punitive damages, attorney's fees, and costs.

---

**2.** American Capital Government Securities, Inc. was dismissed with prejudice by the plaintiffs pursuant to Federal Rule of Civil Procedure 41(a)(1)(i) on February 22, 1991.

**3.** The plaintiffs' complaint states at paragraph 14:

Plaintiffs did not learn of the misrepresentations, fraud and violations of the Tennessee law until October or November of 1987, when

Plaintiffs contacted the Securities Department of the State of Tennessee.

The Affidavit of Ethel Joyner states at page 3: It was not until the beginning of September, 1988, that I had any idea that any of the defendants had violated any securities laws of the State of Tennessee nor any federal securities laws.

The court will consider the Affidavit date for purposes of summary judgment.

*Tennessee Consumer Protection Act*

■ The defendants Triple Check and Von Almen seek dismissal of plaintiffs' claim under the Tennessee Consumer Protection Act ("TCPA"), Tennessee Code Annotated § 47–18–101 et seq. The TCPA, the defendants contend, does not apply to the sale of securities. Alternatively, if the TCPA does apply, the defendants contend that the action is time barred.

The defendants rely on *Nichols v. Merrill Lynch, Pierce, Fenner & Smith,* 706 F.Supp. 1309 (M.D.Tenn.1989). In *Nichols,* the district court agreed with the pertinent portion of the United States Magistrate's Report which looked to the courts of other jurisdictions and to Tennessee Code Annotated § 47–18–115 [4] in finding that the TCPA did not apply to securities transactions. *Nichols,* 706 F.Supp. at 1337–38. The magistrate stated that the "Tennessee General Assembly ... deemed it appropriate to look to the [Federal Trade Commission] and federal decisions interpreting the FTC Act for guidance in construing the scope and meaning of the TCPA." *Id.* He noted that no federal court had applied section 5(a)(1) of the FTC Act to transactions in securities. *Id.* The magistrate stated that applying the TCPA to securities transactions would extend remedies to plaintiffs that neither Congress nor the Tennessee legislature included in their respective securities laws. *Id.* The magistrate also found support for his position in state and federal courts construing similar statutes. *Id.* at 1337–38. He stated that he did not believe that the Tennessee legislature would have intended the TCPA's treble damage provisions to apply to security transactions already regulated by extensive state and federal securities laws. *Id.* at 1338.

In response to the magistrate's Report, the Attorney General of Tennessee filed an amicus brief stating, inter alia, that the magistrate had not given sufficient weight to *Skinner v. Steele,* 730 S.W.2d 335 (Tenn. Ct.App.), *permission to appeal denied,* (Tenn.1987). In *Skinner,* the court of appeals rejected the assertion that a claim alleging fraud in the sale of an annuity certificate by an insurance company was excluded from the purview of the TCPA by Tennessee Code Annotated § 47–18–111(a).[5] The court of appeals held that the sale of insurance policies and annuities was covered by the TCPA in spite of Tennessee's separate regulatory system for the insurance industry. In the same fashion, the Attorney General argued, the existence of separate federal and state regulatory mechanisms for securities transactions does not preclude the application of the TCPA to securities. *Nichols,* 706 F.Supp. at 1323.

District Judge Higgins, in *Nichols,* analyzed the analogous law of Massachusetts. He noted that the Supreme Judicial Court of Massachusetts held the Massachusetts Act to be applicable to the insurance industry. *Id.* at 1324. Judge Higgins also noted that the Supreme Judicial Court of Massachusetts eventually held that securities transactions were not covered by the Massachusetts statute, emphasizing federal predominance in the field of securities regulation. *Id.* at 1325. Judge Higgins determined that the Tennessee Supreme Court would most likely follow the great weight of authority and find that the TCPA does not apply to securities. *Id.*

The plaintiffs rely on the reasoning of *Skinner v. Steele, supra,* and the Attorney General's amicus brief supporting objections to the magistrate's proposed finding

---

4. **47–18–115. Construction.**—This part, being deemed remedial legislation necessary for the protection of the consumers of the state of Tennessee and elsewhere, shall be construed to effectuate the purposes and intent thereof. It is the intent of the general assembly that this part shall be interpreted and construed consistently with the interpretations given by the federal trade commission and the federal courts pursuant to § 5(A)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)).

*Tenn. Code Ann.* § 47–18–115.

5. **Exemptions**—(a) The provisions of this part shall not apply to:
(1) Acts or transactions required or specifically authorized under the laws administered by, or rules and regulations promulgated by, any regulatory bodies or officers acting under the authority of this state or of the United States;....
*Tenn. Code Ann.* § 47–18–111(a)(1).

and recommendations in *Nichols.* They state that the sale of insurance is not covered by the Federal Trade Act, yet the Tennessee Court of Appeals held in *Skinner* that the sale of insurance products was covered by the TCPA. The plaintiffs also cite a passage from the amicus brief:

It is notable that in Tennessee, unlike other states, there is little danger from conflicts from dual regulation as the securities act, insurance code, and the TCPA are all administered and regulated by the Department of Commerce and Insurance. Moreover, the Attorney General is the legal advisor and court representative of the Department of Commerce and Insurance in regulatory actions enforcing all three (3) acts.

(Memorandum of State of Tennessee as *Amicus Curiae* Supporting Objection to the Magistrate's Proposed Findings and Recommendations, p. 11).

The court agrees with the reasoning of Magistrate Judge Sandidge and Judge Higgins as set forth in *Nichols.* *See also French by Pickard v. Wilgus,* 742 F.Supp. 434 (M.D.Tenn.1990) (Judge Nixon holds that TCPA does not extend to securities transactions). The court finds that the Tennessee Consumer Protection Act does not apply to transactions involving the purchase and sale of securities. The plaintiffs' claims under the Tennessee Consumer Protection Act are therefore dismissed.

### *Statute of Limitations under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5*

■ Defendants Triple Check and Von Almen move for summary judgment on the plaintiffs' claims arising under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5. The defendants contend that the applicable statute of limitations expired before the complaint was filed.

The Supreme Court recently announced, in *Lampf, Pleva, Lipkind, Prupis & Peti-* *grow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), a uniform limitations period for litigation instituted pursuant to section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder. The Court held:

Litigation instituted pursuant to § 10(b) and Rule 10b–5 ... must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation.

*Id.,* 111 S.Ct. at 2782.[6]

The defendants argue that the Joyners had knowledge of the facts which constituted their causes of action in August 1987. They point to the affidavit of Ethel Joyner and the letter she wrote to the Tennessee Department of Commerce & Insurance on September 16, 1987 as proof of their assertion. The affidavit and letter show that by August 1987 the Joyners knew that the principal of their investment was declining and that the monthly return on their $92,500 investment was substantially below what they were allegedly told it would be. The plaintiffs do not dispute this.

The statute of limitations therefore began to run in or prior to August 1987 when the Joyners became aware of facts which constitute their cause(s) of action under Rule 10b–5. Therefore, plaintiffs' claims under section 10(b) and Rule 10b–5, with one exception, are barred by the one year limitations period.

■ A genuine issue of material fact remains as to when the statute of limitations began to run on the plaintiffs' claim under Rule 10b–5 that defendants "deliberately misrepresented their right to do business in the State of Tennessee, their authorization to act as brokers, agents, and investment advisors, and to buy and to sell securities and as a result of these misrepresentations have damaged Plaintiffs." There is evidence from which a reasonable juror could infer that the plaintiffs did not

---

**6.** The Supreme Court applied the statute of limitations retroactively in *Gilbertson.* In *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), the Court stated: "when the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata." *Id.,* 111 S.Ct. at 2448. This court concludes that the statute of limitations in *Gilbertson* should be applied retroactively.

discover facts that constitute the alleged violation until September 1988. (*See* Affidavit of Ethel Joyner and Discussion below). Therefore summary judgment on this issue is denied.

*Statute of Limitations and Claims under the Tennessee Blue Sky Law*

■ Tennessee Code Annotated § 48–2–122(h), *supra,* is part of the Tennessee Blue Sky Law and applicable to it. The plaintiffs' Memorandum in Opposition explains the violation of the blue sky law complained of:

> It was not until the beginning of September, 1988, in a conversation with Mr. Athon that [Joyner] learned of the facts constituting a violation of Tennessee law under T.C.A. sec. 42–2–101 et seq. That is, that the defendants were not licensed to do business or sell securities in Tennessee.

(Memorandum in Opposition, p. 13). The complaint alleges violations of Tennessee Code Annotated §§ 48–2–109 and 48–2–122.

The defendants contend that they are entitled to summary judgment as to plaintiffs' claims for a $2,000 investment made on April 14, 1986 and a $7,269.40 investment made on May 1, 1986 because the transactions occurred more than two years before the complaint was filed. The defendants also contend that they are entitled to summary judgment as to all remaining claims because the plaintiffs knew or should have known of facts constituting the alleged violations more than one year prior to filing the complaint. They base their contention on the letter written by Joyner to Mr. Bill Mitchell, Chief of Enforcement, Security Division, Department of Commerce & Insurance on September 16, 1987 and Joyner's affidavit. (Defendants' Exhibit A & Affidavit of Ethel Joyner).

The plaintiffs argue that the statute of limitations began to run in September 1988 when they were notified by Mr. Kenneth J. Athon, an investigator with the Department of Commerce & Insurance, Securities Division, that it was the department's opinion that there had been a violation of Tennessee securities law and that the defendants had not been licensed to do business or sell securities in Tennessee. (Affidavit of Ethel Joyner). Plaintiffs argue that they kept in constant contact with the Securities Division and Mr. Athon and "could not have discovered the violation upon the exercise of reasonable diligence at an earlier date since the State of Tennessee apparently had not come to a conclusion as whether a violation had been committed by defendants." (Plaintiffs' Memorandum in Opposition, p. 13).

■ Plaintiffs' claims against the defendants under the Tennessee Blue Sky Law for investments made more than two years before September 16, 1988, are barred under the two year provision of Tennessee Code Annotated § 48–2–122(h). The defendants, however, have not established the absence of a genuine issue of material fact as to when the statute of limitations began to run on the issue of the defendants' licensure to do business and sell securities. The defendants claim the statute of limitations began to run in August 1987; the plaintiffs contend it began to run in September 1988. A reasonable juror could conclude from the evidence that the statute of limitations began to run in September 1988. Accordingly, the court must deny the defendants' motion for summary judgment on this issue.

To summarize:

(A) The plaintiffs' claims under the Tennessee Consumer Protection Act are dismissed;

(B) The plaintiffs' claims under Section 10(b) of the Securities Exchange Act and Rule 10b–5 are dismissed except for the issue of defendants' alleged misrepresentation of their right to do business in Tennessee and act as brokers, agents, and investment advisors;

(C) The plaintiffs' claims under the Tennessee Blue Sky Law as to investments prior to September 16, 1986 based on the allegations that the defendants were not licensed are dismissed.

In all other respects, the defendants' motion to dismiss and for partial summary judgment are denied.

IT IS SO ORDERED.